# Lanier Lumber Co. v. Rees *et al.*

*Bill in Equity by a Corporation, to set aside as fraudulent a Transfer of its Stock by another Corporation, and to enforce the Statutory Lien on such Stock for the Payment of a Debt due it.*

1. *One corporation can not invest in the capital stock of another corporation.*—One corporation, unless expressly authorized thereto, can not invest its capital stock in the capital stock of another corporation ; and all such attempted purchases or contracts of subscription are not simply voidable, but are absolutely void.

2. *Same; enforcement of lien for payment of debt owing by one corporation to another.*—Where, in a bill filed by one corporation to enforce a lien on shares of its capital stock, (Code, § 1674), for a debt due it by another corporation, it is averred that an officer of the debtor corporation purchased certain shares of complainant's capital stock, and had them issued to him individually, but paid for them with property belonging to the debtor corporation, and held them as trustee for it, and recognized the beneficial ownership in said stock to be in the said company, such averments show no right in the complainant corporation to reach and subject such stock, as the property of the debtor corporation, to the payment of its debt ; since, for the enforcement of a lien on said stock, the court would have to find the existence, and decree the performance, of an illegal and absolutely void contract.

APPEAL from the Chancery Court of Talladega.
Heard before the Hon. S. K. McSPADDEN.
The facts of the case are sufficiently stated in the opinion.

C. C. WHITSON and BROWNE & DRYER, for appellant.
1.   The lien of the complainant upon the stock belonging to its shareholders for any debt or liability incurred to it by a stockholder, is conferred by statute and clearly exists, irrespective of its by-laws.—Code of 1886, § 1674; *Birmingham T. & S. Co. v. East Lake L. Co.*, 101 Ala. 304; *Mobile Mut. Ins. Co. v. Cullom*, 49 Ala. 558; *Plan. & Mer. Ins. Co. v. Selma Sav. Bank*, 63 Ala. 585; Cook on Stocks & Stockholders, § 523.
2.   The question of *ultra vires* or of the want of power on the part of the Morrison Lumber Co. to own stock in

[Lanier Lumber Co. v. Rees *el al* ]

complainant company does not arise in the case.    While it may be true that one corporation can not subscribe for the capital stock of another, and that no agreement to do so, while executory is capable of enforcement, upon principles of public policy; still, when the corporate funds have been invested in such stock the transaction is complete, whether such stock be purchased in its own name, or in the name of an individual, such corporation becomes the owner thereof, and it necessarily owns the real and beneficial interest.    Our court has held, in respect to railroad corporations, that while one railroad company, after having acquired the majority of the stock in another railroad, can not and will not be permitted to vote the stock, still it has the power to sell and dispose of the same.—*M. & C. R. R. Co. v. Woods*, 88 Ala. 630.

3.  A corporation, after it has acquired stock in another corporation by purchase is the owner, "and has the right, while it remains the owner, to collect and receive dividends thereon, and has the right to sell and dispose of the same;" and it makes no difference in principle that such stock is held or stands in the name of an individual agent or officer of the corporation, it is just as though it stood in the name of the corporation."—*Holmes v. Holmes*, 127 N. Y. 252; *Milbank v. N. Y., L. E. & W. R. R. Co.*, 64 How. Pr. 20; *M. & C. R. R. Co. v. Woods*, 88 Ala. 631; *Mack v. DeBardeleben, C. & I. Co.*, 90 Ala. 396; *Wright v. Pipe Line Co.*, 101 Pa. St. 204, s. c. 47 Amer. Rep. 701.

4.  Subscription in the name of Robert Morrison and payment for 330 shares in the Lanier Lumber Co. by the Morrison Lumber Co., coupled with the issuance and delivery of the shares, took the transaction out of the category of executory, and placed it in that of executed, contracts.   There was nothing left for the Lanier Lumber Co. to do, nothing for the Morrison Co. to do, to accomplish what both intended.    Hence, the question of whether or not the Morrison Co. had or had not the power to acquire shares of stock in complainant, has nothing to do with the merits of the case.

5.  It is true, "that a party to an *ultra vires* executory contract, made with a corporation is not estopped to set up the want of corporate capacity either by the fact of contracting, or by the fact that the fruits and issues of the contract have been received and enjoyed."  "But where the contract is fully executed—where whatever

[Lanier Lumber Co. v. Rees *et al.*]

was contracted to be done on either hand has been done— a different rule prevails.—*Long v. Ga. Pac. Railway Co.*, 91 Ala. 519 ; *Sherwood v. Alvis*, 83 Ala. 115 ; *M. & C. R. R. Co. v. Wood*, 88 Ala. 631.

KNOX & BOWIE, and COOKE, FRAZIER & SWANEY, *contra.*—1. Where there is an appeal to this court on the ruling on demurrers, and where some of the demurrers are good and reach the equity of the bill, this court will not reverse merely because in its opinion some of the demurrers sustained were not well taken.—*Harrison v. Heflin*, 54 Ala. 552.

2. No corporation, without express authority, can subscribe for stock in a new corporation. Its agreement to do so is *ultra vires* and can not be enforced. If an officer of the company, in his own name, subscribes for the stock, and the stock is issued to him with the understanding and agreement between the two companies that he is to use it as the property of his company, such agreement, being in violation and contravention of law, is also *ultra vires* and can not be enforced, and if the new company consents to this transaction and participates therein by issuing the stock to the individual, it can not enforce any lien upon the stock standing in the name of the individual or his transferee for an indebtedness of the original company to it.—1 Morawetz on Coporations, § 433 ; 1 Jones on Liens, § 415 ; *White's Bank v. Toledo Ins. Co.*, 12 Ohio St. 601; *Buckeye M. & F. Co. v. Harvey*, 20 S. W. Rep. 427 ; *Cen. R. R. Co. v. Pensylvania R. R. Co.*, 31 N. J. Eq. 475.

3. The effect of any transaction on the part of a corporation in this State in excess of its charter power is to render such transaction totally void, and so long as the same remains unexecuted no person claiming through such a violation of law or consenting thereto can derive any benefit therefrom, or enforce any claim resulting from the same. The principle of estoppel applies neither to the corporation nor the other party.—*Grand Lodge of Ala. v. Waddill*, 36 Ala. 313 ; *Westinghouse Machine Co. v. Wilkinson*, 79 Ala. 314 ; *Chewacla L. Works v. Dismukes*, 87 Ala. 344; *Chambers v. Falkner*, 65 Ala. 449 ; *Sav. Bank v. Dunkin*, 54 Ala. 471 ; *City Council v. Plank Road Co.*, 31 Ala. 76 ; *Buckeye M. & F. Co. v. Harvey*, 20 S. W. Rep. 427.

4.   The company waives any lien arising from an in-
debtedness from one of its stockholders to it when it con-
sents to the   transfer of the same upon its books and
issues a new certificate of stock therefor in the name of
the transferee.—*Nat. Bank v. Watsontown Bank*, 105 U. S.
217 ; *B. T. & S. Co. v. La. Nat. Bank*, 99 Ala. 379 ; *Per-
rine v. Fireman's Ins. Co.*, 22 Ala. 575 ; Lowell on Trans-
fer of Stock, § 181 ; 1 Morawetz on Corp., § 207; 1 Jones
on Liens, §§ 404, 407.

5.   The complainant can not claim any lien upon the
stock for so much of the indebtedness as admittedly accru-
ed after the transfer to Rees and notice thereof to complain-
ant.—*Bir. T. & S. Co. v. La. Nat. Bank*, 99 Ala. 379 ; 31
Amer. & Eng. Encyc. Law, 429, note.

6.   Complainant has, confessedly, waived its lien up-
on the stock assigned to Frank Rees by permitting the
transfer thereof to be made on its books, unless the bill
brings the complainant within the influence of the prin-
ciple that an action induced by fraud may, under certain
circumstances, be rescinded.   Without regard to the
question as to the sufficiency of the allegations of fraud
in this case, no party claiming to be deceived in a trans-
action can rescind the same where the condition of the
parties has been so altered by part compliance with the
contract as to make it impossible to restore the *status* of
the parties, and where there is no offer to do so.—*Barnett
v. Stanton*, 2 Ala. 182 ; *Piedmont L. & I. Co. v. Piedmont
F. & M. Co.*, 96 Ala. 389; *Henry v. Allen*, 93 Ala. 197 ;
*Davis v. Betz*, 66 Ala. 206.

7.   No transaction can be rescinded on account of
fraudulent representations, unless among other things it
appears that these representations were made for the pur-
pose of influencing the action of the party complaining
in the matter referred to.   This rule especially applies
in those cases where the alleged misrepresentation was
made with reference to transaction with a third party.—
Bigelow on Torts, 10 ; 5 Amer. & Eng. Encyc. of Law,
330.

8.   Stock standing in the name of one person and
transferred by him to another can not be charged with a
lien against the equitable owner thereof while so in the
hands of the transferee without averment and proof that
the transferee had notice of the alleged equitable owner-
ship on the part of the debtor to the company at the time

40

the stock was obtained.—*Stickney v. Adler*, 91 Ala. 198 ; *Plan. & Mer. Ins. Co. v. Selma Sav. Bank*, 63 Ala. 585.

McCLELLAN, J.—Robert Morrison, owning nine hundred of the one thousand shares of stock in, and being president of, the Morrison Lumber Company, subscribed in his own name and had issued to him individually three hundred and thirty-three shares, of the aggregate face value of $33,300, of the capital stock of the Lanier Lumber Company, and paid therefor with property belonging to the Morrison Lumber Company. These shares, it is averred, he held as trustee for said Morrison Lumber Company, and all alongr ecognized the beneficial ownership of said company ; and before the filing of the present bill two hundred and twenty of these shares of stock were transferred on the books of the Lanier Lumber Company, and assigned by Robert Morrison to Frank Rees in payment of a debt the Morrison Lumber Company owed him, and the certificates for the remaining shares, one hundred and thirteen in number, were delivered to the First National Bank of Chattanooga, and are now held by it,—though no transfer of them has ever been made on the books of the Lumber Company,—presumably as security for debts of either the Morrison Lumber Company or Robert Morrison, though the bill does not disclose for what purpose or in what supposed right these certificates are in the hands of the bank; and it is immaterial in the view we take of the case. While all this stock was so held by, and all of it stood in the name of, Robert Morrison for the Morrison Lumber Company, that corporation became indebted to the Lanier Lumber Company in a large sum of money, and the present bill is filed by the latter company for the purpose of collecting its said debt. This is sought to be done by having said shares of stock declared and decreed to be the property of the Morrison Lumber Company, the transfer of a part thereof to be set aside and avoided as fraudulent, and this being done, by a further decree declaring and enforcing by sale, &c., the lien which section 1674 of the Code gives to corporations on the interest of shareholders in its capital for the security and payment of debts due from the shareholders to the corporation.

There is no averment in the bill that the Morrison Lumber Company was authorized by its charter or other-

wise to subscribe for and hold or own stock in other corporations, but, to the contrary, it is virtually admitted that it had no such statutory power.   And it is too well settled to require discussion that without such authority one corporation can not subscribe for, or invest its own capital in the shares of other corporations either directly, as by becoming in its own name an incorporator of a new corporation, or indirectly by subscriptions in the names of persons acting as agents and holding as its trustees. And it is equally clear upon principle and authority that all such attempted subscriptions or contracts of subscription, are not voidable, but utterly void.—1 Mor. or Corp., §§ 431, 433 ; 4 Amer. & Eng. Encyc. of Law, p. 249, n. 2; *B. M. & F. Co. v. Harvey*, 20 S. W. Rep. 427 ; *Central R. R. Co. v. Pennsylvania R. R. Co.*, 31 N. J. Eq. 475 ; *Commercial Fire Ins. Co. v. Board of Revenue*, 99 Ala  1.

It is, therefore, obvious, indeed counsel for appellant do not controvert, that the contract disclosed by the bill, considered as a contract by which the Morrison Lumber Co. became the beneficial subscriber to the stock of the Lanier Lumber Co., was and is wholly void and entirely inoperative to invest property in the said shares in the former company.   But it is insisted that the contract was wholly executed by the payment of the subscribed value of the stock in the property of the Morrison Lumber Company, and the issuance of certificates of stock to Robert Morrison, in his individual name, but to be held by him as trustee for said company, and that on the familiar principles announced in the case of *Long v. Ga. Pac. Railway Co.*, 91 Ala. 519, the stock should now be treated as the property of the Morrison Lumber Company, and subjected to complainant's lien as such, notwithstanding, and without at all looking to, the illegal means by which it was acquired by that company.   The infirmity of this position lies in its assumption, or the proposition underlying it, that the void contract of subscription had been fully executed to the investiture of the property in the Morrison Lumber Company.   The averments and prayer of the bill demonstrate that this is not the case.   The stock was subscribed for by Robert Morrison ; the name of the Morrison Lumber Co. nowhere appears in that connection.   The stock was issued to him individually and not to his company, and it stood on the books of the Lanier Lumber Company in his name and not in the

name of the Morrison Lumber Company. As his stock the Lanier Lumber Company has no lien on it, for he is not that company's debtor. To get the title to the stock out of him and vest it in the debtor corporation so that it could be subjected to the lien against the debtor, or, in other words, to show any sort of ownership, technical or beneficial, in the debtor corporation, reliance would be had upon the void contract of subscription. That contract must be proved, as it has been alleged, and when proved there must be, as prayed in this bill, a decree of the court *executing* and directing or adjudging performance of it, before relief could be granted even were the contract a perfectly valid one; and relief can not be granted at all upon the contract as it is, because courts will not intervene to the enforcement of void contracts. As is said by counsel, complainant's right to enforce a lien on this stock as the property of the Morrison Lumber Company, the legal title to the stock not being in that company, but in Robert Morrison, depends upon whether the Morrison Lumber Company has any rights it could enforce against Robert Morrison; the complainant having only a lien upon such property interest in the stock as its debtor could assert and effectuate against Robert Morrison. And it being most clear that the debtor corporation could have no standing in any court to establish and secure, by judgment or decree against said Morrison, any interest in the stock, since to that end the court would have to find the existence, and decree the performance, of an illegal and utterly void contract, it follows that the complainant is equally, and for the same reason, without right to reach and subject this stock as the property of the Morrison Lumber Company. The relief prayed can not be granted without the establishment and execution of an illegal and void contract. It, therefore, can not be granted at all, because no court will decree the performance or grant relief depending upon proof of such a contract.

The demurrers to the bill which were addressed to the point we have discussed were properly sustained. This destroys the supposed equity of the bill, and the other questions presented by other assignments of demurrer need not be considered. The decree of the chancellor is affirmed.