# First National Bank of Gadsden v. Winchester.

*Bill in Equity by Junior Mortgagee for Foreclosure, and to Cancel as Ultra Vires and Fraudulent a Prior Mortgage.*

1. *Ultra vires executory contracts of corporations, void.*—Under the rule rendering void *ultra vires* executory contracts of corporations, a note and mortgage executed by a corporation, as surety, not being within its charter powers, imposes no enforceable personal obligation upon the corporation, and the mortgage does not divest the corporate entity of its legal title to the property it purports to convey.

2. *Legal title to corporate assets; single ownership of stock.*—The legal title to corporate property is in the corporation and not in the shareholders; and it is generally held, that when the body ceases to be an association of persons by the concentration of the stock into the hands of a sole owner, the corporation is not dissolved, nor does the sole stockholder become the legal owner of the property, but the corporate body is said to be in abeyance merely, ready to resume active functions, whenever by the transfer of shares, it becomes again a body aggregate.

3. *Corporation the legal and equitable proprietor; for what purpose.* For the purposes of the charter, the corporation is the legal and equitable proprietor of its assets. If to enforce a right, or redress a wrong in respect of corporate property, a resort to a court of equity be essential, the corporation itself may sue in that forum and the presence of the stockholders before the court is not required. The corporation represents the entire estate.

4. *Relation of corporation to shareholders; trustee and cestui que trust.*—A private business corporation is the legal representative of those who contribute the capital, or their successors, holding and managing for their private use and benefit, and

[First National Bank of Gadsden v. Winchester.]

the shareholders, there being no creditor or other holder of a superior right to be consulted, are the equitable owners of the corporate property.

5. *Power of all the shareholders to convey corporate property as against the corporation and those holding under it.*—All the stockholders of a private business corporation, owing no debts, the substantial, beneficial, ownership of the corporate property being in them, may execute a mortgage on the corporate property to secure their individual debt, which is valid in equity as against the equitable demands of subsequent purchasers or incumbrancers, with notice, from the corporation.

6. *Case at bar.*—Stockholders in private business corporation, not indebted, sold their shares to the remaining stockholders, who, as security for the purchase money, gave the notes and mortgage of themselves individually and of the corporation conveying the corporate property: *Held*, that the mortgage passed the equitable title of the shareholders in the corporate property, and was valid, in equity, against subsequent mortgagees of the corporation, with notice.

APPEAL from Gadsden City Court.
Tried before Hon. JOHN H. DISQUE.
This case is stated in the opinion.

A. E. GOODHUE, for appellant, cited, Cooke on Stockholders, 679; *Hall v. Auburn T. Co.,* 27 Cal. 255; *Chewacla Iron Works v. Dismukes,* 87 Ala. 346; *M. & C. R. R. Co. v. Grayson,* 88 Ala. 576; *Ala. Gold Life Ins. Co. v. Cent. Agr. & Mech. Assn.,* 54 Ala. 73; *Sherwood v. Alvis,* 83 Ala. 117; *City Council v. Plank Road Co.,* 31 Ala. 76; 1 Waterman on Corporations, 625; *Com. v. Smith,* 10 Allen, 448.

DORCH & MARTIN, *contra,* cited, 1 Mor. on Cor. 227, 228 & note, 229, 233, 237, 249, 261, 262, 2 Ib. 622, 624, 625, 631, 633, 711, 712, 693; *Long v. Ga. Pac. R. R.,* 91 Ala. 519; *Graham v. R. R. Co.,* 102 U. S. 106; *Parsons v. Joseph,* 92 Ala. 406; *Hughes v. Wright,* 12 Am. St. Rep. 413; *Jordan v. Collins,* 107 Ala. 572; 2 Mor. Corp. 789, 792, 793, 800; *Kelly v. Longshore,* 78 Ala. 203; *Decatur, etc., v. Moses,* 89 Ala. 542; 79 Ala. 166.

HEAD, J.—The Gadsden Foundry & Machine Works was organized as a body corporate under our general incorporation laws. On March 1, 1887, its only stock-

holders were J. E. Line, S. M. Winchester, John Flinn and Wm. Hagen. On that day, Line and Winchester sold and assigned all their stock in the corporation to their co-stockholders, Flinn and Hagen, at the agreed price of $7,750, to be paid in the future, for which seventeen promissory notes, maturing at different times, were given. These notes were not only executed by the purchasers, Flinn and Hagen, but by the corporation also, by and through Flinn, as president, and Hagen, as secretary. To secure them, Flinn, Hagen, their wives and the corporation (the latter acting in its corporate name, by Flinn as president and Hagen as secretary), at the same time executed a mortgage on certain described real and personal property belonging to the corporation, with power of sale, etc. This mortgage recited that Flinn and Hagen were the only stockholders of the corporation.

December 24, 1891, the said Gadsden Foundry & Machine Works, to secure an indebtedness of $5,000, evidenced by four described promissory notes then made by it to A. L. Glenn, trustee (the indebtedness being alleged in the bill to have been owing to the complainant), executed to said Glenn, trustee, a mortgage on the same property as that described in said former mortgage, with power of sale, etc.; and on June 25, 1892, executed another mortgage on a part of the property to the complainant to secure an additional indebtedness of $1,250.

The mortgage of March 1, 1887, to Line and Winchester, was foreclosed under the power and the mortgagees therein became the purchasers, and have possession of the property as such purchasers.

The bill is filed against the corporation and the said Line and Winchester, by the said second mortgagee praying cancellation of said first mortgage and of the foreclosure thereof; asking foreclosure of its own mortgages, and for general relief.

The respondents, Line and Winchester, moved to dismiss the bill for want of equity, which motion was sustained and the bill dismissed. The cause was not at issue as to the defendant corporation.

. It is not disputable that the relation assumed by the corporation, as such, by the execution of the notes and mortgage to Line and Winchester, was that of surety to Flinn and Hagen and that such a contract was not

within its charter powers; and under the strict rule so long and often declared by this court rendering void *ultra vires* executory contracts of corporations, we are constrained to hold that the suretyship so undertaken imposed no enforceable personal obligation upon the corporation, and that the mortgage did not divest the corporate entity of its legal title to the property it purported to convey.—*Smith v. Insurance Co.,* 4 Ala. 558; *Grand Lodge v. Waddill,* 36 Ala. 313; *Marion Sav. Bank v. Dunkin,* 54 Ala. 471; *Chambers v. Falkner,* 65 Ala. 448; *Cent. R. R. & B. Co. v. Smith,* 76 Ala. 572; *Wilks v. Ga. Pac. R. R. Co.,* 79 Ala. 180; *Westinghouse Machine Co. v. Wilkinson,* 79 Ala. 312; *Sherwood v. Alvis,* 83 Ala. 115; *Chewacla Lime Works v. Dismukes,* 87 Ala. 344; *Long v. Ga. Pac. Railway Co.,* 91 Ala. 519; *Lanier Lumber Co. v. Rees,* 103 Ala. 622. Personal obligation, however, for the payment of the debt rested upon Flinn and Hagen, the debtors, and were by them expressly assumed in and by the notes and mortgage they executed, and it is not to be questioned, of course, that whatever vendible interest they had in the property, if any, passed by the mortgage for the purposes of the intended security, unless some rule of public policy, applicable to the case, forbade it.

The question then is, what interest had Flinn and Hagen in the property which by law they were competent to transfer as security for their individual debt, and what the relative rights of their mortgagees and the said subsequent encumbrancers, with notice, created by the corporation itself acting within its charter powers?

As we have seen, Flinn and Hagen, when they executed the notes and mortgage now assailed, were the only stockholders of the corporation, and there were no creditors or other parties in interest to be affected. It was purely a private business corporation, organized solely for the profit of the stockholders, and in nowise to serve the public.

There seems to be no contrariety of opinion among text-writers and courts to the effect that the shareholders of private business corporations, where there are no creditors or others interested, are the beneficial owners of the corporate property. Morawetz, an authority of distinction on this branch of the law, says: "A private corporation is in reality a voluntary association, formed

by agreement of its members for the purposes set forth in their charter. The real or beneficial ownership of everything belonging to an ordinary trading corporation is in the persons who compose it. Each stockholder has an equitable interest in the corporate affairs; and this interest must be managed in accordance with the provisions of the charter, by the agents appointed to act for the whole association. The courts of *law,* however," he says, "recognize a corporation only as one body, acting in the corporate name. The individual stockholders are not, in contemplation of law, parties to contracts made by the association in a corporate capacity, nor have they any *legal* right or title to property vested in the corporation. At law, a corporation and its stockholders are considered as distinct from each other; and the contractual relation between the stockholders is wholly ignored. It thus appears that the courts of law are, in many cases, unable to protect the rights of stockholders of a corporation, and that the assistance of chancery is necessary to the attainment of justice. The relation between a corporation and its several members," he continues, "may, for all practical purposes, be treated as that of trustee and *cestui que trust.* In contemplation of law the property and rights of an incorporated association belongs to the united association acting in the corporate name, and not to its stockholders. The latter, however, are the real owners; and a technical trust thus arises in their favor, which will be enforced by the courts of equity."

The principle here stated that the legal title to the property of the corporation is in the corporation itself and not the shareholders cannot, of course, be questioned, and the authorities, for the most part, go so far as to hold that even when the body ceases to be an association of persons by reason of the concentration of all the stock in the hands of one owner, the corporation is not thereby dissolved, and the sole stockholder does not thereby become legal owner of the property.—*Button v. Hoffman,* 61 Wis. 20; 50 Am. Rep. 131. There being, with us, no such entity as a corporation sole, the corporate body when reduced to one stockholder, is said to be in abeyance merely, ready to resume active functions whenever by transfers of shares to others by the sole owner, it becomes again a body aggregate. It is abey-

[First National Bank of Gadsden v. Winchester.]

ance, not dissolution and restoration to the shareholder of legal ownership.—*Louisville Banking Co. v. Eiseman,* 94 Ky. 83; 42 Am. St. Rep. 335; Cook on Stock, (2d Ed.), §631; Mor. on Corp. 635.

But now we are in a court of equity inquiring of equitable ownership. It seems to us to be logically necessary that Morawetz and other authors and courts should hold to the doctrine that a corporation of the nature of this is the legal representative of those who contribute the capital, or their successors, holding and managing for their private use and benefit, and that the latter (there being no creditor or other holder of a superior right to be consulted) are necessarily equitable owners of the corporate property. It is true, that for the purposes of the charter, the corporation is the legal and equitable proprietor. If to enforce a right, or redress a wrong in respect of corporate property, a resort to a court of equity be essential, the corporation itself may sue in that forum and the presence of the stockholders before the court is not required. The corporation represents the entire estate. But, that presupposes a case where no antagonistic relation to the corporation, set up by the unanimous act of the stockholders, is the subject matter of investigation. A conflict of that character presents a different question. We are, in that case, required to consider how far the unanimous voice of the stockholders may modify or control corporate action in reference to the management and disposition of corporate property. Such is the question here presented. All the stockholders mortgaged the property to secure their debt, and the substantial, beneficial ownership being necessarily in them and held by the artificial creature of the law, the corporation, for their exclusive behoof, we hold that their conveyance passed that interest against the equitable demands of subsequent purchasers or incumbrancers with notice from the corporation. We have, in support of this conclusion, an elaborate discussion, leading to the same result, by the Court of Appeals of Maryland, in *Swift v. Smith,* 65 Md. 428; 57 Am. Rep. 336. It was there held that a purchaser of shares of stock from one who owned all the stock of the company, was bound in equity by a mortgage executed by the sole owner while such, upon the corporate property. At the time Flinn and Hagen executed the mortgage assailed, .

being the only parties interested, they had the right to procure at once, without the power of successful resistance from any source, a dissolution of the charter and restoration of themselves to their legal ownerships. Such dissolution was necessary only as it concerned the legal ownership. They already had the beneficial estate, and having it, could dispose of it. Mr. Thompson, in his work on Corporation, approves *Swift v. Smith, supra,* and adds, if the sole owner may convey the corporate property, in equity, no reason is perceived why all the stockholders, however numerous, may not accomplish the same result by their joint deed.—4 Thomp. Corp. §5096.

We hold that, in equity, the mortgage to Line and Winchester is superior to those of the complainant on the same property.

There was some property embraced in the mortgage of the First National Bank which was not included in the prior mortgage to Winchester and Line, and it is insisted by the complainants that this bill should be retained for foreclosure in respect to that additional property. This is true, so far as the Gadsden Foundry and Machine Works and the complainants are concerned, but Winchester and Line have no interest in that question. As we have seen, the cause is not at issue as to the Foundry and Machine Works, and the motion to dismiss for want of equity, which the chancellor sustained, and from which this appeal is taken, was made only by Winchester and Line. The effect of the decree appealed from was, it would seem, to dismiss the bill only as to Winchester and Line, leaving the case open for future issue as against the respondent, the Foundry and Machine Works. At any rate, we will expressly modify the decree of dismissal so as to show that it operates only as to Winchester and Line.

By the foreclosure of the mortgage to Winchester and Line, the condition annexed to it became discharged, and the complete equitable title to the property vested in Winchester and Line, who purchased at their own sale subject only to the right of seasonable disaffirmance. This is not a bill for the purpose of disaffirmance or redemption. The decree of the chancellor as modified is affirmed.

Affirmed.