### SHUMPERT v. NATIONAL STATE BANK OF COLUMBIA et al.

#### In re LION FURNITURE CO.

(Circuit Court of Appeals, Fourth Circuit. February 2, 1916.)

No. 1389.

1. CORPORATIONS ☞477(1) — MORTGAGES — CONSIDERATION — MORTGAGES TO STOCKHOLDERS.

A corporation and its sole stockholders conveyed all of its assets to A. and W., who indorsed on the conveyance a transfer of the assets to the corporation. The stockholders also transferred the stock to A. and W., and new certificates were issued in their names and assigned to the former stockholders as security. A. and W. paid the former stockholders $7,000 in cash, and they and the corporation made notes for $22,500, to secure which a chattel mortgage was executed by the corporation. The corporation was indebted to a bank, and the former stockholders made a new note to the bank, and assigned the notes and mortgage and stock certificates as security. Payments were subsequently made on the notes and mortgage, part of which were paid to the bank, and part, with the permission of the bank, to the former stockholders. Held, that the transaction was in effect a sale by the stockholders of their interest in the corporation and a mortgage by the corporation of its assets to provide for payment of its debts, and payment to the former stockholders of the agreed value of their interest and the mortgage was good as security in the hands of the bank to the extent of the balance due on its debt, since, when the former stockholders took up the corporation's note, substituting their own, they became creditors of the corporation, and the mortgage to the extent of the debt was good in their hands, or the hands of their assignee.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1859, 1865–1868; Dec. Dig. ☞477(1).]

2. CORPORATIONS ☞478—MORTGAGES—VALIDITY—ESTOPPEL.

The consent or permission of the bank to the payment of money by the corporation to the former stockholders in no way affected the bank's rights, as it was under no duty to subsequent creditors to enforce payment of its security, and had no authority to prohibit the corporation from paying money to the former stockholders.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1871; Dec. Dig. ☞478.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. CORPORATIONS** ⬧99(1) — INDEBTEDNESS — ASSUMING DEBTS OF STOCK-
HOLDERS.

As a general rule a corporation cannot legally bind itself to pay the
purchase price of stock sold by a stockholder to a third person, and this
principle is embraced in the inhibition of Const. S. C. art. 9, § 10, and
Civ. Code 1912, § 2889, against the issuance of stocks or bonds save for
labor, money, or property, and against all fictitious increase of stocks or
indebtedness.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 444; Dec.
Dig. ⬧99(1).]

**4. CORPORATIONS** ⬧99(1) — INDEBTEDNESS — ASSUMING DEBTS OF STOCK-
HOLDERS.

Other stockholders and existing creditors, unless they have waived the
rule or estopped themselves from asserting it, are always entitled to the
protection of the rule that a corporation cannot bind itself to pay the pur-
chase money of stock sold by a stockholder to a third person.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 444; Dec.
Dig. ⬧99(1).]

**5. CORPORATIONS** ⬧477(3) — INDEBTEDNESS — ASSUMING DEBTS OF STOCK-
HOLDERS.

As stockholders are the equitable owners of corporate property when
outstanding debts have been paid, and can by merely formal legal pro-
ceedings sell the property, transfer the legal title and divide the proceeds
of the sale, they may in equity bind the corporation by a sale or mortgage
for their own benefit as individuals as against themselves and all others
subsequently becoming creditors or stockholders, with full notice of the
conveyance or mortgage and the purpose for which it was given.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1858; Dec.
Dig. ⬧477(3).]

**6. CORPORATIONS** ⬧542(3) — INDEBTEDNESS — ASSUMING DEBTS OF STOCK-
HOLDERS.

Subsequent creditors of a corporation may attack a mortgage executed
by a corporation to secure a stockholder for the purchase money of his
stock, unless he has notice by record or otherwise, not only of the existence
of the mortgage, but of the purpose for which it was given, as the law
authorizes those dealing with a corporation to assume that the corporate
assets are kept for corporate purposes, and that the proceeds of a cor-
porate mortgage have been paid into the treasury of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2156; Dec.
Dig. ⬧542(3).]

**7. CORPORATIONS** ⬧547(4) — INDEBTEDNESS — ASSUMING DEBTS OF STOCK-
HOLDERS.

A corporation and its sole stockholders executed a joint bill of sale of all
of its assets for a recited consideration of $29,500 to W. and A., who indors-
ed on the conveyance a transfer of the assets to the corporation. The stock-
holders also transferred their stock to W. and A., and new certificates
were issued in their names and assigned to the former stockholders as
security. A. and W. paid $7,000 of the consideration in cash, and they
and the corporation made notes for $22,500, secured by a chattel mortgage
of the corporation, attached to which was evidence that its execution
was authorized by A. and W. as directors and sole stockholders. The bills
of sale and mortgage were duly recorded. *Held*, that subsequent creditors
were put on notice that the mortgage was executed as part of the pur-
chase by W. and A. of the stock in the corporation, and could not attack
the validity of the mortgage.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2181; Dec.
Dig. ⬧547(4).]

⬧For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston, in Bankruptcy; Henry A. Middleton Smith, Judge.

In the matter of the Lion Furniture Company, bankrupt. An order of the referee, denying a petition of J. C. Shumpert, trustee, to set aside notes and a mortgage in favor of the National State Bank of Columbia and others, was approved and confirmed by the District Court, and the trustee appeals. Affirmed.

Hunter A. Gibbes, of Columbia, S. C., for appellant.

W. M. Shand, of Columbia, S. C. (Shand, Benet, Shand & McGowan, of Columbia, S. C., on the brief), for appellees.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. The Lion Furniture Company, a corporation of South Carolina, was adjudicated a bankrupt on a voluntary petition March 18, 1915. The following transactions took place on June 6, 1912:

E. G. Cook and H. K. Cook, sole stockholders of the company, and the company itself, through E. G. Cook and H. K. Cook, its officers, executed to Jules N. Winsten and M. B. Abrams a conveyance of all of the stock in trade and other assets of the corporation. The consideration mentioned in the conveyance was $29,500. Indorsed on this paper was a transfer or assignment, signed by Winsten and Abrams, of all the assets back to the corporation for "valuable" consideration. The Cooks transferred and assigned all of the capital stock of the corporation, of the par value of $10,000, to Winsten and Abrams. The certificates of stock were canceled and new certificates issued in the name of Jules N. Winsten and M. B. Abrams, and these new certificates were then assigned in blank to the Cooks. Abrams and Winsten paid to E. G. Cook and H. K. Cook $7,000 in cash as part consideration for the property transferred to them; and they and the corporation made notes for the remainder of the purchase price, $22,500, payable to the Cooks. A chattel mortgage was executed by the corporation through Winsten and Abrams, its officers, and Winsten and Abrams as individuals in favor of the Cooks for the purpose of securing the payment of the notes, aggregating $22,500. The mortgage recites that the $22,500 is a debt of the corporation. It purports to convey all of the assets of the corporation as security for the notes. Attached to the mortgage is evidence of the fact that the execution of it was authorized by the directors, Abrams and Winsten, and by Abrams and Winsten, the sole stockholders. Both the conveyance and the mortgage were duly recorded in the office of the clerk of court for Richland county. When these papers were executed the corporation was indebted to the National State Bank of Columbia in the sum of $9,700, which was made up of $6,700 old indebtedness of the company, and $3,000 borrowed to aid in paying off mercantile creditors at the time of the transfer to Winsten and Abrams.

Shortly after June 6, 1912, the Cooks made a new note to the bank for the $9,700 and assigned to the bank the notes and mortgage for

$22,500 and certificates for the entire capital stock as security. The corporation's notes for $9,700 were then canceled. The Cooks used the $7,000 paid them in cash in paying all the other debts of the corporation existing on June 6, 1912. The corporation continued in business under the control and management of Winsten and Abrams, the sole directors and stockholders. Between June 6, 1912, and the adjudication in bankruptcy the corporation made payments out of its assets on the notes and mortgage, aggregating $15,270.31. With the permission of the bank, part of this money was paid direct to the Cooks; the balance was paid to the bank and credited on the note of the Cooks which the bank held. The bank continued to hold as security the notes and mortgage executed by the corporation. The Cooks now claim that there is owing by the corporation on the notes and mortgage the sum of $9,856. The amount due the bank on the note of the Cooks secured by the assignment of the notes and mortgage of the corporation is $5,774.82. The assets of the corporation arising from a sale made under the order of the court amount to a little over $8,304. This money is held by the trustee pending the determination of the question as to the validity of the mortgage and notes.

[1] The transaction was in effect a sale by the stockholders of their interest in the corporation, represented by their stock, and a mortgage by the corporation of its assets to provide for (1) the payment of the corporate debts, and (2) the payment to the outgoing stockholders of the agreed value of their interest in the corporate assets after the payment of the debts. It seems clear that the mortgage of the corporation was valid in the hands of the Cooks and in the hands of the bank, their assignee, to the extent of the balance due on the debt to the bank. That debt was admittedly a debt of the corporation; and when the Cooks took it up by substituting their own notes in consideration of the note and mortgage given to them by the Furniture Company, they became creditors of the corporation and were entitled to hold the mortgage executed to them at least to the extent of the debt of the corporation which they had settled with the bank. This being so, it is evident that the mortgage was good as a security in the hands of the bank, the assignee of the Cooks, to the extent of the balance due on its debt, which the Cooks had settled by a substitution of their own notes with the Furniture Company's mortgage as security.

[2] We do not see that the consent or permission of the bank to the payment of money by the corporation to the Cooks, who claimed the corporate notes subject to the security of the bank's debt, could affect the bank's rights. The bank was not in control of the Furniture Company; and it was under no duty to subsequent creditors to enforce the payment of its security. It had no authority to prohibit the corporation from paying money to the Cooks. No legal detriment can be allowed to result to the bank from not objecting to that which it had no power to prevent. It had a right to hold its security without enforcement as long as it saw fit. The mortgage therefore is good in the hands of the bank as security for its debt.

After the payment of the balance due the bank, there will be a surplus in the hands of the trustee; and the question of difficulty is

whether this should be paid to the Cooks, as holders of the remainder of the mortgage debt, or be distributed among the creditors generally.

[3-5] The Constitution of South Carolina provides:

"Stock or bonds shall not be issued by any corporation save for labor done, or money or property actually received or subscribed; and all fictitious increase of stock or indebtedness shall be void." Section 10, article 9.

The statute law of the state contains the same provision with slight verbal variances. Code of 1912, § 2889.

It is elementary that the legal title to corporate property is in the corporation, and not its stockholders, and that as a general rule a corporation cannot legally bind itself to pay the purchase money of stock sold by a stockholder to a third person. This principle is embraced in the Constitution and statutory inhibition above quoted. The application of the principle depends, however, upon the position of those who invoke it. Other stockholders and existing creditors are always entitled to the protection of the rule unless they have waived it or estopped themselves from asserting it. But when all outstanding debts have been paid, the stockholders are the equitable owners of the corporate property. They could by merely formal legal proceedings sell the property, transfer the legal title, and divide the proceeds of the sale; and it seems to follow that they may in equity bind the corporation by a sale or a mortgage for their own benefit as individuals as against themselves and all others who subsequently become creditors or stockholders with full notice of the conveyance or mortgage and the purpose for which it was given. This is the conclusion of the courts of Maryland and Alabama in well-considered opinions. Swift v. Smith, 65 Md. 428, 5 Atl. 534, 57 Am. Rep. 336; First National Bank of Gadsen v. Winchester, 119 Ala. 168, 24 South. 351, 72 Am. St. Rep. 904.

[6] Nevertheless subsequent creditors may invoke the protection of the general principle that a mortgage executed by a corporation to secure a stockholder for the purchase money of his stock, unless as a subsequent creditor he has notice by record or otherwise, not only of the existence of the mortgage, but of the purpose for which it was given. Notice of a mortgage is not notice that the proceeds have been applied to other than corporate purposes. On the contrary, the law authorizes all who deal with a corporation to assume that all of the corporate assets are kept for corporate purposes; that the proceeds of a corporate mortgage have been paid into the treasury of the corporation. If the proceeds have not been paid to the corporation by the mortgagee, but diverted to other purposes, then it follows that the mortgage in the hands of the mortgagee cannot be enforced as against a subsequent creditor without notice of the diversion of the proceeds of the mortgage. In a case like this the Circuit Court of Appeals of the Seventh Circuit thus well states the principle:

"But it is said that the creditors represented by the trustee in this case had knowledge of the existence of the mortgage, and must therefore have extended their credit with notice of the facts. The contention clearly embodies a non sequitur. Knowledge of the presence on the records of the mortgage does not imply notice that out of the capital or assets of the corporation the shareholders were paying their individual debts. The mortgage on file, so far as

the creditors knew, may have been executed for corporate purposes, its avails remaining somewhere among corporate assets." In re Haas, 131 Fed. 232, 65 C. C. A. 218.

[7] The joint bill of sale of the Lion Furniture Company and the Cooks, as its only shareholders, to Abrams and Winsten for $29,500, the bill of sale of Abrams and Winsten back to the Lion Furniture Company, and the mortgage from the Lion Furniture Company and Abrams and Winsten to the Cooks to secure 52 notes, aggregating $22,500 were sufficient on their face, when taken together, to put the public on notice of the nature of the transaction. As we have endeavored to show, those who credited the company with this notice of the mortgage and the purpose for which it was given are not in a position to attack its validity.

Affirmed.