DREW, Justice.
Afro-American Life Insurance Company, a Florida corporation (hereinafter called Afro), purchased 856-% shares of stock of Central Life Insurance Company of Florida (hereinafter called Central) from individual owners of said stock. When these certificates were presented to Central, that corporation refused to recognize the validity of *364 the sales, refused to note the transfer of ownership of the stock certificates on its records, and refused to issue new certificates to Afro.
Afro, joined by some of the stockholders of Central who had sold shares to Afro, as plaintiffs, brought an action against Central and certain stockholders in Central who had sold their shares to Afro, for a decree declaring Afro the true owner of the shares of stock and to compel Central to make the appropriate entries upon its books and to issue new shares.
Defendants answered denying the validity of the alleged sales of stock to Afro and claiming that Afro had no power to acquire stock of Central,
The Trial Court entered a final decree granting a summary judgment in favor of Afro. Such decree held that the sales of stock were valid and ordered Central to make the necessary transfers. From this final decree, Central and the other parties defendant appealed.
Afro is a Florida corporation, organized and existing under a charter which was originally granted March 4, 1901, pursuant to Section 2119 et seq., R.S.Fla.1892, and which was amended on November 25, 1921, pursuant to the provisions of Section 4045 et seq., R.G.S.1920, F.S.A. §§ 610.01 et seq., 611.01 et seq. The charter, as amended, recites that the general nature of the business to be engaged in is writing of insur-•ancé ánd that Afro has the express powers, among others, “to invest its funds in such real and personal property as it may-deem desirable” and in particular “to purchase, own, sell and dispose of * * * . any stocks, shares, bonds, securities, notes * * * of any corporation and to exercise all rights thereto including the right to represent the same and exercise any voting power thereof.”
All parties concede that the charter provisions of Afro, on its face, gives Afro full authority to purchase the stock of any other corporation, including Central, and, while such owner, to exercise all of the rights of ownership, including the right to vote said stock. The parties further agree that the corporation law here applicable is Section 4045 et seq., R.GiS.1920.
Central urged in the lower Court and contends on this appeal that the charter, as amended, must be interpreted in- the light of the statutory law then existing and that such law did not expressly authorize one corporation to purchase stock in another and, therefore, the State had no authority to grant Afro the right to purchase stock of another corporation.
With reference to the contention of Central, we turn first to the relevant statutes. Section 4049, supra, provided that any three or more persons could become incorporated for the “transaction of any lawful business”. Under Section 4050, supra, each corporation charter was required to set forth: “The general nature of the business or businesses to be transacted”, (italics added) thus recognizing that one corporation could lawfully engage in more than one business. Under Section 4052, if a charter was found to be “for an object authorized by law,” the charter could be issued “for the purposes and upon the terms, named in the charter.” Under Section 4087, supra, amendments to the charter were authorized if found to be “lawful” and “in accord with the purposes of the charter”. ' ■
The charter of Afro expressly authorized that corporation to engage in the business of writing insurance with the power to invest funds thus obtained. There is no doubt that the- writing of insurance is a lawful business. Further, the insurance business necessarily requires the investment of funds obtained from premiums paid for insurance and the validity of the authorization of that power to Afro is likewise not here questioned. Thus, we think that the real question présented is simply whether the additional provision in the charter of Afro, that is, to purchase stock in another corporation, was a “lawful” provision which was “in accord with the purposes of the charter” and which could by the State be “authorized by láw.”
*365 With reference to this question, we have carefully examined the authorities cited, by Central. These cases, while they contain dictum tending to support Central’s position, are different on their facts from the instant case. For example, in several of the cited cases, the corporations whose authority to purchase stock of another corporation was challenged, had no express authorization for that in their charters. Lanier Lumber Co. v. Rees, 103 Ala. 622, 16 So. 637; Mechanics’ and Working Men’s Mutual Savings Bank and Building Ass’n of New Haven v. Meriden Agency Co., 24 Conn. 159; Central Railroad Co. v. Collins, 40 Ga. 582; Hazlehurst v. Savannah, Griffin and N. A. R. Co., 43 Ga. 13. In Woodberry v. McClurg, 78 Miss. 831, 29 So. 514, cited by Central, there was an express statutory prohibition against such activity. In Berry v. Yates, 24 Barb., N.Y., 199, authority to purchase stock in another corporation was narrowly construed when the Court held the authorization did not extend to permitting the-corporation to subscribe to the capital stock of a mutual insurance corporation to lend its means of credit thereto and to agree to give its notes in advance for premiums on insurance subsequently to be effected.
Central also relies upon People ex rel. Peabody v. Chicago Gas Trust Co., 1889, 130 Ill. 268, 22 N.E. 798, 799, 8 L.R.A. 497. In that case the charter of the trust company authorized it to manufacture and distribute gas and electricity in the state and to purchase capital stock of any gas or electric company in Illinois. The trust company did nothing toward the manufacture and distribution of gas but concerned itself with acquiring stock in four other gas distribution companies. The court stated that there was nothing in the nature of a gas company business rendering it proper for such a company to accumulate funds for outside investment, and said further that the óbjective by one gas company to acquire stocks in a similar company tended to create a monopoly in the gas distribution business which was against public policy. Therefore, the Court held that the authorization of a corporation in the gas distribution business to púrchase stock in a corporation engaged in a similar business "was not a “.lawful purpose” for which such a corporation could be formulated.
We do not think that the decision of the Illinois Court to the effect that it was against public policy of Illinois for a gas company to purchase stock of another gas company is controlling of the case at bar. Moreover, in the Chicago Gas Trust Co. case, the Illinois Court recognized that, where ancillary to its primary objective, a corporation purchased stock of another corporation, the transaction might not be unlawful. By way of illustration of this point, the Court referred to the general law of Illinois in regard to life insurance companies which made it lawful for them to invest in stocks of the United States or other stocks approved by the auditor. In such circumstances, the Court said: “The main object of forming'such a company is to engage in the business of life insurance, but the power to invest surplus funds in certain stocks is given as art incident to such business.”
Our examination of these and other authorities on the general subject leads us. to the conclusion that the general case law of other jurisdictions is of no assistance to a determination of the instant problem. This is true because .the situations elsewhere presented to the "courts varied with reference to constitutional and statutory provisions and local concepts of public policy, and because' the authorities themselves were wide of agreement. The want of harmony of the authorities with reference to the common law power of corporations, to acquire stock of other corporations was particularly noted in 1903 in Robotham v. Prudential Insurance Co., 64 N.J.Eq. 673, 53 A. 842, 851, where the Court pointed oht that there was authority for at least four separate propositions as follows: corporations were under no disability at common law to purchase and hold stock of other corporations; corporations could not acquire stock of other corporations without express authorization under a statute; corporations were prohibited by a general rule based on public policy, entirely distinct from the doctrine of ultra *366 vires, from purchasing stock in another corporation; and a corporation by a. rule of law based on public policy or on the doctrine of ultra vires, or on both, was prohibited from acquiring the stock of another corporation, where the business of one or both had certain characteristics or where the purchase was made for certain purposes.
We are not referred to any decision of this Court nor to any provision of our statutes which precluded the authorization by the State of one insurance company to purchase stock in another corporation. In this latter connection, we note that in the corporation laws under which Afro’s charter was amended, there were numerous statutes pertaining to insurance companies. Sections 4243-4326, passim, R.G.S.1920, F. S.A. § 625.01 et seq. Section 4268, with reference to the giving and accepting of rebates, provided in part that a life insurance company shall not “sell or purchase as inducement to insurance or in connection therewith, any stocks, bonds, securities or property or any dividends or profits, accruing or to accrue thereon, * * (Italics added.) But none of these statutes prohibited a transaction such as the one here in question. On the other hand, in the statutes governing banking companies, the Legislature had specifically declared that it was unlawful for any bank or trust company organized under the laws of the State directly or indirectly, to “invest any of the funds of said bank or trust company in stock of any incorporated company in this State or elsewhere, except the stock of the Federal Reserve Bank of this district”. Section 4152, R.G.S.1920.
This examination of the statutes shows that the Legislature explicitly prohibited banking corporations from purchasing stocks in other corporations but at the same time omitted such a general prohibition from the extensive statutes governing insurance companies and instead prohibited the purchase of stock by them only under specified circumstances.
We think these statutes indicate plainly that the Legislature did not intend that an insurance company should be wholly precluded from purchasing stocks of other corporations but did intend that these companies could purchase stock of other corporations except under the circumstances expressly forbidden. Under this view, it follows that the purchase of stocks by an insurance corporation was not unlawful under the statutes except when done under the circumstances prohibited by the statutes. Therefore, we hold that the provision in Afro’s charter authorizing it to purchase stock in another corporation was a lawful provision and was in accordance with the purposes of the charter and could validly be authorized by the State under the law.
We note that questions such as the one presented here can no longer arise in connection with insurance company purchases of stock effected on and after October 1, 1953, by reason of Chapter 28015, Laws of Florida 1953, effective that date, but filed in the office of Secretary of State on May 19, 1953. This chapter now appears as Sections 635.27-635.33 F.S.1953, F.S.A. In these sections the Legislature has set out extensive provisions with reference to the manner and type of investment of funds of life insurance companies, specifying among other things the percentage of the assets of a life insurance company which may be invested in stocks of other corporations.
We have considered the other contentions of appellants and found them to be without merit.
Affirmed.
THOMAS, Acting C. J., HOBSON, J., and HERIN, Associate Justice, concur.