## Edwin D. Buell, Trustee of Great Eastern Manufacturers Company, Bankrupt, Appellee, v. Samuel Lanski and Nathan Kawin, Appellants.

### Gen. No. 28,749.

1. CORPORATIONS—*when improper dispersal of assets not actionable.* No cause of action exists in favor of a trustee in bankruptcy of the corporation against the beneficial owners and holders of all the capital stock of such corporation who were also its officers and directors in complete control of its affairs at the time, for the recovery of a large amount of its assets distributed to themselves in the guise of extra salaries, where all the stockholders and directors participated and acquiesced in such distribution, and the company was then fully solvent, although heavily insolvent two and a half years later when adjudicated a bankrupt, and no rights of creditors or other persons were then involved or impaired thereby.

2. CORPORATIONS—*when improper dispersal of assets not actionable as against public policy.* The distribution of a large amount of the assets of a corporation by the directors and officers, who were also the beneficial owners and holders of all the capital stock, to themselves in the guise of extra salary is not void as to the corporation as against public policy so as to be actionable by the trustee in bankruptcy appointed two and a half years later, in a suit by him to recover the amount in question, where all the stockholders and directors acquiesced in the distribution, the corporation was then solvent and its solvency not impaired by the distribution, and the rights of existing creditors were not impaired or violated.

3. CORPORATIONS—*dispersal of assets in fraud of income tax lia-*

*bility not privately actionable.* The fact that a private corporation distributed a large portion of its assets to defendants, who were the beneficial owners and holders of all the capital stock, in the guise of excess salary, and the corporation thus paid no federal income tax does not render such distribution void as against public policy so as to give a trustee in bankruptcy of the corporation a cause of action against the distributees to recover the amount on behalf of the corporation, no rights of creditors or other persons being involved or impaired.

Appeal by defendants from the Superior Court of Cook county; the Hon. Denis E. Sullivan, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1923. Reversed with directions. Opinion filed March 17, 1924. *Certiorari* denied by Supreme Court (making opinion final).

Isaac B. Lipson and Joseph A. Golde, for appellants.

John A. Bussian, for appellee.

Mr. Justice Johnston delivered the opinion of the court.

This is an appeal from a decree in the sum of $15,443.71, rendered in the superior court of Cook county in favor of the complainant, Edwin D. Buell, trustee of the Great Eastern Manufacturers Company, Bankrupt, against the defendants, Samuel Lanski and Nathan Kawin. The amended bill of complaint alleges in substance that the complainant is the trustee in bankruptcy of the estate of the Great Eastern Manufacturers Company, an Illinois corporation; that on February 11, 1922, he was authorized and directed by the United States District Court to institute this suit; that on September 11, 1917, the defendants were the principal stockholders of the Great Eastern Manufacturers Company, and owned 99 per cent of the entire outstanding capital stock of that corporation; that Samuel Lanski was treasurer of the corporation, Nathan Kawin was president, and that Abe H. Lanski was secretary; that Samuel Lanski, Nathan Kawin, Abe H. Lanski and Lottie Kawin

composed the board of directors of the company; that the by-laws provided that the business of the corporation should be managed by a board of four directors to be elected annually; that the directors should have the right to compensate the officers of the corporation and pay them a reasonable salary to be determined in advance at each annual directors' meeting, or at any adjourned meeting; that on January 1, 1919, the defendants Nathan Kawin and Samuel Lanski, being the principal officers and directors, and in complete control of the affairs of the corporation, agreed between themselves that the corporation should pay to Nathan Kawin, in addition to his regular salary of $5,200 for the year 1918, a sum equal to 5 per cent of the gross sales of the corporation for the year of 1918, which amounted to $12,741.41; that in accordance with the agreement the defendants Samuel Lanski and Nathan Kawin directed the bookkeeper to credit the personal account of Kawin with the sum of $12,741.41; that on the same day, January 1, 1919, the defendants agreed to divide the sum of $12,741.41 equally between themselves; that beginning on May 9, 1919, the defendants caused the corporation to pay Nathan Kawin the sum of $200 per week, in addition to his regular salary, in liquidation of the amount of $12,741.41; that each week Nathan Kawin, immediately upon receipt of the $200, paid to Samuel Lanski the sum of $100, which practice was continued until February 28, 1920; that thereafter the defendants caused the corporation to pay to each of the defendants the sum of $100 a week, which practice was continued until the defendants had withdrawn from the treasury the sum of $13,409.75, being $688.34 in excess of the sum of $12,741.41 originally agreed upon; that the payment of the corporation to the defendants of the sum of $13,409.75 was not authorized by the charter, by-laws or resolution of the corporation; that the agreement to pay that amount and the

payment thereof "was a usurpation of the powers" of the defendants "as directors and officers and a direct violation of their trust" to the corporation and was, "therefore, illegal and void in law"; that the estate of the corporation is grossly insolvent, its liabilities exceeding its assets by more than $60,000. The specific prayer of the bill is as follows: "That the said Nathan Kawin and Samuel Lanski, defendants herein, may be adjudged and declared to be trustees for the benefit of the estate of said Great Eastern Manufacturers Co., to the sum of $13,409.75 as alleged aforesaid, and that they may jointly and severally be adjudged and decreed to account of and concerning said sum, and upon an accounting thereof and upon being found indebted for said sum of $13,409.75, they may jointly and severally be ordered, adjudged and decreed to pay over the same to your orator."

The defendants answered the bill. They admitted that on September 11, 1917, they were the beneficial owners and holders of all of the stock of the corporation, and that on December 15, 1918, they entered into an agreement to pay Nathan Kawin in addition to his regular salary a sum equal to 5 per cent of the sales made by Kawin for the corporation during the year 1918. They admitted that on the books of the corporation Nathan Kawin was credited with the sum of $13,409.75, as additional salary for 1918. They admitted that the sum was equally divided between them in installments, as set forth in the bill of complaint. They denied that the payment of the sum of $13,409.75 to Nathan Kawin for past services was unauthorized, illegal or a usurpation of their powers; and denied that such action constituted a violation of their trust to other stockholders and creditors. They alleged that the payments were made with the full knowledge, consent and acquiescence of all the stockholders and directors of said corporation; that said payments were made only from the surplus and undivided profits of the corporation; and that at the time of the

payments the corporation was solvent and possessed of ready assets greatly in excess of the liabilities; that "at the time and place" of the payments "there were no prospects of insolvency" of the corporation, and that the payments "were not made in contemplation of future insolvency or with any attempt to impair the rights of future creditors"; that the payments "in no manner reduced the capital stock" of the corporation, and "the defendants at the time of receiving the payments had no reasonable ground for believing the corporation would become insolvent in the future." Evidence was taken at the hearing, but it is unnecessary to state all of the evidence. In our view of the case the material facts necessary to a decision of the questions involved are not disputed. The chancellor entered a decree in favor of the complainant. The defendants jointly and severally were ordered to pay to the complainant the sum of $13,-409.75 and interest amounting to $2,033.96, making a total of $15,443.71.

The theory on which the complainant relies to maintain his suit is stated by counsel for the complainant as follows: "Complainant's theory is that the defendants' act in withdrawing the sum of $13,409.75 from the treasury of the Great Eastern Manufacturers Company under the guise that it was additional salary paid Kawin as president of said corporation for the year of 1918 was illegal and void, and against public policy."

Counsel for the defendants contend, first, that the act of the defendants was the equivalent of declaring a dividend and was legal; and second, that no rights, either public or private, have been violated by the act of the defendants; that so far as private rights are concerned the act of the defendants "cannot be questioned by subsequent creditors unless the distribution of assets was merely colorable, or made with a view of defrauding future creditors, or unless the company was thereby rendered insolvent."

In the view we take of the case it will not be necessary to decide the question whether the act of the defendants may be considered as the exercise of a lawful right to declare a dividend. In our opinion whatever may be the character of the act of the defendants, the act was not such as to give rise to the supposed cause of action attempted to be maintained in the case at bar. A cause of action, as distinguished from the remedy, has been defined to be "the right to bring an action, which implies that there is some person in existence who can assert and also a person who can lawfully be sued." *Walters v. City of Ottawa,* 240 Ill. 259, 263. Perhaps the clearest and most exact description of a cause of action is the following one given by Pomeroy: "Every remedial right arises out of an antecedent primary right and corresponding duty and a delict or breach of such primary right and duty by the person on whom the duty rests. Every judicial action must, therefore, involve the following elements; a primary right possessed by the plaintiff and a corresponding primary duty devolving upon the defendant; a delict or wrong done by the defendant which consisted in a breach of such primary right and duty; a remedial right in favor of the plaintiff and a remedial duty resting on the defendant springing from this delict, and finally the remedy or relief itself. Every action, however, complicated or however simple, must contain these essential elements." Pomeroy's Code Remedies; Remedies and Remedial Rights (4th ed.), sec. 347, pp. 460, 461.

In the case at bar the Great Eastern Manufacturers Company, the corporation in question, was a private corporation organized for "the purpose of manufacturing, buying and selling talking machines and other merchandise." The defendants owned all of the stock of the corporation. The board of directors consisted of the defendants and Abe H. Lanski and Lottie Kawin. The payments made by the defendants were made with the knowledge, consent and acquiescence of

Abe H. Lanski and Lottie Kawin. All during the time that the payments were made the corporation was solvent. The payments were not made in contemplation of future insolvency of the corporation, or to impair the rights of future creditors. The agreement in regard to the payments was entered into on December 15, 1918. The Great Eastern Manufacturers Company was adjudged bankrupt on July 22, 1921. The present suit was brought March 20, 1923.

On the facts stated a cause of action in favor of the complainant does not exist. Who has been injured by the act of the defendants? Whose antecedent primary rights have been violated? There are no stockholders or creditors who can complain of the act of the defendants. The bill of complaint alleges that the act of the defendants constituted a "usurpation of the powers" of the defendants as "directors and officers," and a "direct violation of their trust to the corporation." Suppose that this allegation be granted to be true, there are no stockholders or creditors of the corporation who can complain. Who then is going to proceed on behalf of the corporation and for whom would the proceeding be instituted? In other words, what individuals are in a position to assert that their rights have been violated? If the act of the defendants should be treated as the ultra vires act of the corporation, what individuals are there who have the right to proceed against the corporation? Whether the act of the defendants considered as an ultra vires act of the corporation would render the charter of the corporation liable to forfeiture by the State, is another and different question not involved in the case at bar. Granting that the complainant as the trustee in bankruptcy of the corporation, the Great Eastern Manufacturers Company, stands in the place of the corporation and represents both the corporation and the creditors, what can he do in behalf of the corporation and the creditors? He can assert no greater rights against the defendants than the rights possessed by

stockholders and creditors who may have been injured by the acts of the defendants. But there are no such stockholders and creditors. It certainly cannot be maintained that the complainant, as trustee in bankruptcy, is in any respect representing the public in the case at bar. The prayer of the bill is that the defendants may be adjudged and declared to be trustees for the benefit of the estate of the Great Eastern Manufacturers Company for the sum of $13,409.75, and be decreed to pay that sum to the complainant. The present suit is, therefore, clearly a private proceeding without any aspects whatever of a public nature. In this connection it must be borne in mind that the corporation is a private and not a quasi-public corporation.

The contention of counsel for the complainant that the suit may be maintained on the ground that the act of the defendants was void as to the corporation and against public policy is, in our opinion, unsound. Counsel for the complainant states that the question thus presented "is not a new one"; that the case of *Ellis v. Ward,* 137 Ill. 509, "is a leading case in Illinois on the subject and one which is identical in point of fact and law with the case at bar." We do not agree with counsel. In our view there is a material difference between the two cases. In the case of *Ellis v. Ward, supra,* the suit grew out of proceedings which are stated in the opinion of the court as follows (p. 513) : "The auditor of public accounts, under statutory authority, began proceedings in the circuit court of Cook county to enjoin the Republic Life Insurance Company, a corporation of this State, from further proceeding with its corporate business, in which cause Samuel D. Ward was appointed, and duly qualified, as receiver of the estate of such company. After the receiver took possession of the assets of the company, it was developed that the company was insolvent, its liabilities greatly exceeding its assets." It further appears from the opinion of the court that the re-

ceiver filed a bill in equity to recover $23,208.33, which the receiver alleged was unlawfully paid, under a resolution at a stockholders' meeting of the Republic Life Insurance Company, to Farwell, the president of the Republic Life Insurance Company, as compensation for his services as president of that corporation. Farwell, the president of the Republic Life Insurance Company, was also president of the National Life Insurance Company. He owned shares of the stock of the Republic Life Insurance Company, and that company acquired and owned stock of the National Life Insurance Company. Certain parties, who were made defendants with Farwell, entered into an agreement with Farwell whereby Farwell was to sell his stock of the Republic Life Insurance Company to them, with knowledge, as stated by the court (p. 515): "That they were buying up the stock of that company for the purpose of acquiring its control and so the control of the National Life Insurance Company." It was charged that Farwell refused to sell his stock unless he was paid a salary for his past services as president of the two corporations. He had served as president of the Republic Life Insurance Company without a salary and the company had never made any provision for paying him a salary. At an annual meeting of the stockholders of the Republic Life Insurance Company, the agreement above referred to was practically carried out. By some arrangement, not clearly set forth in the opinion, but apparently through the action of the stockholders of the two companies, a finance committee was appointed, which passed a resolution authorizing the Republic Life Insurance Company to pay Farwell $23,208.33 as compensation for his services as president of the Republic Life Insurance Company and $5,208.33 as compensation for his services as president of the National Life Insurance Company. These sums were paid to Farwell. One of the contentions in the case was that Farwell alone was liable. Apparently it was

conceded by all parties that the method by which the payments were made to Farwell was unlawful, and the court so held. Farwell's defense was that he was not present at the meeting of the finance committee which authorized the payments to him, and had no personal knowledge of the committee's action. The rights of the stockholders were not discussed in the opinion of the court. From the opinion it does not expressly appear that the decision of the court was based on the fact that the rights of stockholders and creditors were violated; but that this fact undoubtedly constituted a ground of the decision, is implied by the language of the court, in which the court said (p. 520): "The directors of a corporation are trustees, and have no power or right to use or appropriate the funds of the corporation, their *cestui que trust,* to themselves, or to waste, destroy, give away or misapply them." That the rights of the stockholders and creditors were violated is also indicated by the court when the court stated (p. 532) that Farwell had no notice of the intent of the purchasers of his stock "to wreck the corporation." Furthermore, one of the contentions in the case, as stated in the brief of counsel for the receiver, was that: "The Republic Life Insurance Company was insolvent at the time of the payment of the $23,208.33, and the payment was illegal as to the creditors and stockholders, whether it was solvent or insolvent"; and that "the stockholders and creditors had no actual or constructive notice of the payment of the money."

We have stated the facts in the case of *Ellis v. Ward, supra,* at some length for the reason that counsel for the complainant has discussed the case elaborately and relies on it with absolute confidence. It will be seen that the fact which materially distinguishes that case from the case at bar is that the rights of the stockholders and creditors were violated in that case, while in the case at bar there are no stockholders or creditors whose rights are affected.

The creditors represented by the complainant in the bankruptcy proceedings are not shown to have been creditors of the Great Eastern Manufacturers Company at the time the payments were made to the defendants; and even if they were creditors at that time the evidence shows that the Great Eastern Manufacturers Company was solvent at the time. Counsel for the complainant cites numerous cases which he maintains support his contention that the payments made to the defendants were void on the ground of public policy. We do not deem it necessary to review those cases. It is sufficient to state that an examination of them will disclose the fact that the rights of stockholders and creditors were involved.

Granting, for the sake of argument, that the payments to the defendants were void on the ground of public policy, there is no theory on which the suit in the case at bar can be maintained. Public policy has been defined as "that principle of the law which holds that no subject or citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." *People v. Chicago Gas Trust Co.*, 130 Ill. 268, 294; *Wakefield v. Van Tassell*, 202 Ill. 41, 47. But suppose that the act of the defendants has been injurious to the public or against the public good, has the complainant a legal right to complain of the act? We have seen that it is elementary that before any wrong can be redressed in a legal proceeding, there must be a cause of action, and one of the essentials of a cause of action is that the party who brings the action must have sustained a wrong. The suit in the case at bar is a private suit and not a public one. If a wrong has been committed, it must be either a private or a public wrong. What private wrong has the complainant or the corporation and creditors whom he represents sustained? The corporation has not suffered a wrong that is justiciable, because the defendants owned all of the stock in the corporation. There are, therefore, no stockholders to complain of

the payment to the defendants.  The creditors in the bankruptcy proceeding are not shown to have been creditors coexistent with the acts of the defendants; and even if it appeared that the creditors in bankruptcy were coexisting creditors, the corporation was solvent during the time of the payments to the defendants.  The creditors in bankruptcy, therefore, have sustained no wrong which can be redressed in the case at bar.  There are no other private individuals than the stockholders and creditors who could have suffered any wrong on account of the payments to the defendants.  If a public wrong has been sustained by the public at large by reason of the payments to the defendants, the complainant is not the proper party to bring an action on behalf of the public.

Counsel for the complainant contends that no income taxes have been collected from the Great Eastern Manufacturers Company, and that that is another reason why the act of the defendants should be held to be void and against public policy.  Even if this contention is true, it would follow from the views that we have expressed that the complainant has no cause of action in the case at bar.  He only represents the corporation, the stockholders and the creditors; and none of these parties has the right to complain that the corporation paid no income tax, or that the act of the defendants defeated the collection of the income tax.  That matter would be one for the federal government.

In discussing the acts which corporations may do where no injury results to anyone, Cook, in his work on corporations, uses the following language, which we quote with approval:  "The corporation may also, by consent of all, give away corporate assets, and in a great variety of ways by which directors and corporate officers make a personal profit out of the corporation, a profit which is fraudulent and illegal if any stockholder objects, is legal and is upheld by the

courts if all the stockholders assent or do not object. In other words, the question is, who has been damaged? The State is not damaged and cannot enjoin the act; neither can a stockholder who assents or delays after knowledge of the act; nor can the purchaser or transferee of stock which assented to the act? nor can a corporate creditor who is sure to be paid, or whose debt is not due, or who has not yet recovered judgment; nor can the corporation itself. If no one is injured no one can complain. If there is no damage there can be no suit. The theoretical idea that the act is ultra vires or that the corporation has exceeded its powers or has violated some shadowy principle of public policy is being rapidly abandoned, and the courts are basing their decisions on the logical principle of damage suffered or threatened.'' 1 Cook on Corporations (6th ed.), sec. 3, pp. 15, 16.

In our opinion the suit in the case at bar cannot be maintained on any legal theory. For that reason the decree of the chancellor is reversed with directions to the chancellor to dismiss the bill of complaint.

*Decree reversed with directions.*

Matchett, P. J., and McSurely, J., concur.